*Hines & Porter, for appellant.*
*J. A. Mitchell, for appellee.*

---

## S. Q. M. MAJOR *v.* R. C. WILLIAMS, ET AL.

**Trust Estate—Husband and Wife—Payments by Trustee—Approval of Bond of Trustee.**

Where an estate is left in trust for the benefit of a daughter, the trustee cannot claim credits for money advanced to the husband of such daughter.

**Payments by Trustee.**

When by will an estate is left to a daughter, and her brother is made trustee, and the daughter and trustee and other members of the family live together in the family homestead, and such trustee expends large sums of money in supporting all the members of such family, on account of his affection for them, and uses the income of the members of such family and even more than their income in doing so, he cannot claim credit against the daughter's estate on account of such excessive expenditures.

**Bond of Trustee.**
> The bond of a trustee, where an estate in trust is created by will, must be approved by the court and not by the clerk.

APPEAL FROM SHELBY CIRCUIT COURT.

October 3, 1874.

OPINION BY JUDGE PRYOR:

The court, in the determination of this controversy, has confined its investigation to the judgment rendered in favor of Catherine M. Williams, except in so far as it is claimed by the appellant that the indebtedness of her husband, R. C. Williams, to him, should be applied to the payment of the debt due by appellant to his wife. The attempted settlement between the appellant and R. C. Williams of their individual accounts, embracing many thousand dollars, and containing numerous receipts and vouchers, tends only to confuse and obscure the real object in the prosecution of this action, viz., the settlement of the accounts of the appellant as the executor of the father, and conduces in no manner to aid the court in ascertaining the interest, if any, of Mrs. Williams in her father's estate. No argument or statement, by brief or otherwise, pointing out any errors in these individual accounts, has been made by either side; and as they are foreign to the issue raised by Mrs. Williams, the case will be considered with reference solely to the claim of the latter.

The judgment also being separate and distinct, the parties to the record can hereafter prosecute their appeal, as this judgment leaves these questions undisposed of. We are not disposed to follow the commisioner in his adjustment of the accounts between the appellant and the appellee, Mrs. Williams, as the case can be disposed of without reference to the manner in which these accounts have been stated. The testator, the father of the appellant and Mrs. Williams, owned at his death an estate including land, slaves and personalty valued at twenty thousand dollars. He was indebted, as the evidence shows, in the sum of about three thousand dollars on his own account, and liable for as large a sum, or more, as the surety of the appellant, who was left his executor. The appellant qualified as such in the year 1855, and never at any time has made a settlement of his accounts, the object of this action being to procure a settlement.

The testator left his widow and five children surviving him. By

his will he devised to his daughter, Catherine, now Mrs. Williams, a legacy of two thousand dollars over and above her distributable share, placing the whole of her interest in the hands of her brother, John B. Major, as her trustee. None of this estate or any part of this legacy was ever paid to the trustee or controlled by him in any way. Mrs. Williams was about 16 years of age at the death of her father, and seems never to have had any guardian. Her mother, the widow of the testator, was in feeble health, and had been for years unable to walk, and by the provisions of the will was to have a liberal allowance for her support and maintenance. The executor sold the land, by a proceeding in equity, for the payment of debts, and out of the proceeds seems to have paid the indebtedness of the estate as well as his own, for which his father was liable as surety. No vouchers, or at least but few, were retained by the executor evidencing his payments, and therefore he was in no condition, by reason of his own laches, to receive such credits as he claimed in his settlement made with the commissioner in the present case.

After the sale of the land, the only real estate left was the residence of the testator in the city of Frankfort, where all the family continued to live together and to use, own and control the property in common, the appellant contributing liberally to the support of the family out of his own means, aided by the proceeds of the hire of the negroes, the estate of the mother, and what little money was left of the real estate after the payment of debts. Mrs. Williams continued to reside with the family after she arrived at age, and for several years after her marriage that took place in 1862. She was the principal housekeeper for many years, economical in her habits, but provided for liberally by her brother, the appellant, in all her wants, no doubt as a compensation, to some extent, for her services, but more by reason of his affection for her than anything else, and with no intention of consuming her pecuniary legacy in the expenditure.

It is not unreasonable to allow to her mother the one-third of the proceeds of the land, by reason of the provisions of the will; and deducting that from this sum, and the value of the personalty, Mrs. Williams would then have been entitled, after deducting the indebtedness for which the executor has been credited, as far as he has produced vouchers, to about $962; and to this add the amount of the legacy, making in all $2,962, to which she was entitled in March, 1857. The commissioner in his settlement has committed an error, on page 191 of record, in subtracting Mrs. Major's one-

third from the value of the land and personalty. The value is fixed at $7,216.21, and taking from this $2,405.40, Mrs. Major's interest, leaves a balance to be divided between the five children of $4,810.81, instead of $2,810.81, as reported. The appellee, Mrs. Williams, being entitled to $2,962 the interest on this sum, together with her interest in the hire of the negroes, would yield an income of not less than $250 per annum. This income, together with the expenditures by the mother in the support of the family, would not more than support and maintain the sister in the circle in which she moved. Giving to the executor this interest or income for his expenditures for Mrs. Williams, and the sum of $380, the difference between what is found due appellees by this judgment and that in the commissioner's report, it results in as correct a settlement of the controversy as can be arrived at upon the basis presented by the pleadings and proof.

The executor's burden was relieved greatly by the expenditure of the mother's interest in the support of the family, and although he may not have received full compensation for his liberal, and in many instances improvident, expenditures made for the comfort and welfare of his brothers and sister, the fault is to be attributed to his own kindness and indulgence in his endeavor to gratify their many wants. The trust fund cannot be disposed of by the chancellor in that way. The release executed by the husband is no bar to the wife's recovery, although she seems afterward to have ratified the act. The estate was in trust, no settlement had been made or money paid to her causing the execution of this release. She was also a *feme covert*, and whilst she may have been under a moral obligation to appellant by reason of his kindness to, and expenditure of money for her husband, still she was under no legal obligation to pay, and in no condition, by reason of her coverture, to make such an agreement or to waive her right to the trust estate; and for the same reason the claim of the appellant against her husband cannot be set off against the judgment for her benefit in the present action.

There were expenditures made by the appellant in improving the family residence that were necessary to preserve it, and a charge made against him by reason of some estate held by his mother in her own right in the state of Ohio that was error; but the giving to him all the income of the sister, as well as the difference between the amount found due by him on settlement, is correct; and in this judgment he has received all that the chancellor can contribute to

reimburse him from this trust fund. It is insisted by counsel for the appellees that appellant should be required to account for the value of the slaves, for the reason that he should have sold them and not the land for the payment of the debts. The devisees were nearly all of age when the will was made. The mother had a large interest in the estate. John Major, the trustee of Mrs. Williams, in conjunction with all interested, advised the sale of the land. It was unproductive and of but little value, whilst the slaves were valuable and would produce a greater income than the land, and it was no doubt to the interest of all at that time, to sell the realty and not the slaves.

The removal of the trustee was proper, but the clerk should not have been invested with the power to accept a bond with surety from a new trustee. The bond must be executed and approved by the court. The allowance to the attorneys, if to be paid out of the judgment in favor of Mrs. Williams, is exorbitant; if one-half is to be paid by the husband out of his own means, and we so presume by reason of his litigation with appellant, it is then proper. The trustee, upon qualifying, should be directed to pay a reasonable fee to attorneys, to be fixed by the court. The judgment in favor of Mrs. Williams is *affirmed,* and also *affirmed* on her cross-appeal.

*G. W. Craddock, for appellant.*
*C. M. Harwood, John L. Scott, for appellees.*